**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AMANDA CRANE,** | : | **Civil No. 3:15-CV-983** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Judge Mannion)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **CAROLYN W COLVIN** | : | |
| | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

### I.   Introduction

This case calls upon us to consider a specific and familiar question:  Did a Social Security Administrative Law Judge (ALJ) err in assessing competing medical opinions regarding the degree of a claimant's disability?   We are admonished that we must undertake this specific review against a deferential standard of review, one which is limited to addressing the question of whether the findings of the ALJ are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); 42 U.S.C. §1383(c)(3)(incorporating 42 U.S.C. §405(g) by reference); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200(3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536(M.D.Pa. 2012).

In this case, the plaintiff Amanda Crane ("Mrs. Crane"), seeks judicial review of the final decision of the Commissioner of Social Security

("Commissioner") denying her claim for Disability Insurance Benefits under Title II of the Social Security Act.  Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g).

This matter has been referred to the undersigned United States Magistrate Judge to prepare a report and recommended disposition pursuant to the provisions of 28 U.S.C. §636(b) and Rule 72(b) of the Federal Rules of Civil Procedure.  For the reasons expressed herein, we find that the final decision of the Commissioner of Social Security is supported by substantial evidence.   Accordingly, it is recommended that the final decision of the Commissioner denying Mrs. Crane's claim be **AFFIRMED**, and Mrs. Crane's request for relief be **DENIED**.

## II.   <u>Statement of Facts and of the Case</u>[1]

By her report, Mrs. Crane stopped working in November 4, 2009.  She reported that her decision to do so was the result of a combination of factors, including the symptoms of various medical and psychological conditions, and because she was being verbally harassed in the workplace. (Admin. Tr. 160).  Mrs. Crane is mother to two school-aged children and completed high school and one year of college.  She was only twenty-nine years old when she filed her second

---

[1] Because we write primarily for the benefit of the Court and the parties, we omit a discussion of facts not relevant to the issues raised on appeal.

application for disability benefits on November 29, 2011.[2]  In her application for benefits Mrs. Crane alleges that she is unable to work as the result of the following medical and psychological conditions:  fibromyalgia, carpal tunnel, Lyme disease (as a child still dormant), sacroiliitis, bursitis, depression, anxiety, chronic pain and fatigue, sciatica, restless leg syndrome.  (Admin. Tr. 160).

Mrs. Crane testified that her impairments limit her ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, climb stairs, remember, complete tasks, concentrate, and use her hands.  (Admin. Tr. 144).  Mrs. Crane reported that she cannot sit or stand for long periods of time, or squat or kneel with any frequency, due to sciatica.  She also indicated that she cannot lift much, slurs and fumbles her words, has an impaired memory, and that her hands shake.  Mrs. Crane testified in May 2013 that for the past two years or so she has not been able to walk more than one block at a time.  (Admin. Tr. 65).  She estimated that approximately four years ago she could walk one mile at a time.  Id.  Medical records from Mrs. Crane's rheumatologist, Charles L. Ludivico ("Dr. Ludivico"), reflect that in July 2011

---

[2] Mrs. Crane filed her first application for disability benefits under Title II of the Social Security Act on June 28, 2011, alleging disability beginning November 19, 2009.  She filed a second application for disability benefits under Title II of the Social Security Act on November 29, 2011, alleging a disability beginning November 30, 2009.  The ALJ determined it was necessary to reopen the previous determination.  (Admin. Tr. 15).  Therefore, the relevant period in this case begins on November 19, 2009, and ends on Mrs. Crane's date last insured, March 31, 2013.

Mrs. Crane was walking approximately three miles (or walking for one and one half hours) per day despite her reports of chronic widespread pain at about a seven or eight out of ten (with ten being most severe).  (Admin. Tr. 261).

Mrs. Crane reported that her most symptomatic condition is her fibromyalgia.  She testified that she takes Lyrica for her symptoms, but that her primary care physician, John Fisher ("Dr. Fisher"), recently doubled her dosage because the medication was not working.  (Admin. Tr. 63).  Mrs. Crane also takes Ultram and Tramadol for pain, and vitamin D for a nutrient deficiency.  (Admin. Tr. 64).

During the initial administrative review of her claims, State agency medical consultant Gerald A. Gryczko ("Dr. Gryczko"), who specializes in orthopedics, formulated an RFC assessment following a review of the medical record.  (Admin. Tr. 98-100).  Given the medical evidence available on or before April 2, 2012, Dr. Gryczko assessed that Mrs. Crane could:  occasionally lift and/or carry (including upward pulling) twenty pounds; frequently lift and/or carry (including upward pulling) ten pounds; stand and/or walk (with normal breaks) for a total of six hours per eight-hour workday; sit (with normal breaks) for a total of six hours per eight-hour workday; occasionally balance, stoop, kneel, crouch, climb ramps, and climb stairs; never crawl, climb ladders, or climb scaffolds.  Dr. Gryczko also indicated

that Mrs. Crane's ability to push or pull (including the operation of hand controls) is limited in both upper extremities, but did not set any particular weight limitation. He also recommended that Mrs. Crane avoid concentrated exposure to extreme cold, vibration, and hazards.

Mrs. Crane's claim was initially denied on April 2, 2012. Mrs. Crane requested an administrative hearing, and continued to submit additional records until her hearing took place.

While this matter was pending, on July 15, 2012, Mrs. Crane injured her right knee and right foot in a motor vehicle accident. (Admin. Tr. 456-57). X-rays and a CT scan revealed a posterior fracture of the lateral tibial plateau (near the knee), and fracture of the anterior calcaneus (heel bone), cuboid bone (bone on outer side of foot), and the lateral aspect of the navicular bone (top inner side of the foot). Mrs. Crane was advised to remain non-weight bearing on the right side, and was prescribed a knee brace (adjusted to allow only 90 degrees of flexion in the knee) with an attached boot to immobilize the foot and ankle. Two weeks later follow-up x-rays showed that Mrs. Crane's fractures were stable and well-aligned. (Admin. Tr. 454). In late August 2012, Mrs. (Admin. Tr. 453). Mrs. Crane was advised that it was safe for her to begin full weight bearing activities using her knee brace and walking boot. She was instructed to begin to wean the boot and

brace in two weeks.  In September 2012, Mrs. Crane reported that her right knee was pain free, and that she was ambulating with the aid of a cane.  (Admin. Tr. 452).  Mrs. Crane was advised to continue with her home exercise program, and was instructed that she may use the cane to ambulate fully with full weight bearing on the right side.

Mrs. Crane began attending weekly chiropractic appointments in October 2012.  Mrs. Crane told her chiropractor that her neck and back pain prevent certain activities of daily living.  (Admin. Tr. 469).  Mrs. Crane's chiropractor assessed her condition at each appointment based on a combination of postural evaluation, orthopedic tests, and palpation evaluation.  (Admin. Tr. 469).  During weekly sessions between October 2012 and April 2013, Mrs. Crane's chiropractor noted the following orthopedic test results: positive Kemp's test; positive shoulder depression test; positive Bragard's sign; positive Laseague (straight leg raise) test; positive Patrick's test; positive Soto-Hall test.  (Admin. Tr. 469-522).  These notes, however, do not identify what each particular orthopedic examination tests for, or discuss the significance of the results.

Mrs. Crane's disability application was supported by a medical opinion, albeit a summary opinion whose provenance was uncertain.  Mrs. Crane's treating source submitted an undated medical source statement that Mrs. Crane estimates

6

was completed at some point in 2012.  (Admin. Tr, 523-525, 532-33.)  Thus it is

unclear whether Dr. Fisher had the benefit of the chiropractor's notes when he

completed his assessment.  (Admin. Tr. 82).  In this undated check box form, Dr.

Fisher assessed that Mrs. Crane could:  stand or walk for a total of less than one

hour per eight-hour workday and stay on her feet less than one hour at a time; sit

for a total of less than one hour per eight-hour workday and for less than one hour

at a time; alternate between sitting and standing for one hour per eight-hour

workday; rarely (about four times per day) lift or carry any object weighing up to

five pounds, and never lift an object weighing more than five pounds; never grasp,

manipulate objects, or push and pull controls with upper or lower extremities;

frequently reach; occasionally climb stairs; and never bend, squat, or crawl.  He

also noted that Mrs. Crane would need two hours of bed rest per eight hour

workday, frequently suffers from debilitating back pain, and should have only

moderate exposure to unprotected heights, moving machinery, changes in

temperature, changes in humidity, and fumes.  He assessed that Mrs. Crane would

have moderate difficulty driving automotive equipment and a severe limitation

dealing with workplace stress.

On May 16, 2013, Mrs. Crane appeared and testified with the assistance of

counsel before Administrative Law Judge Timothy Wing ("ALJ").   Impartial

vocational expert Karen Kane ("VE Kane") also appeared and testified. The ALJ denied Mrs. Crane's application for benefits in a written decision dated May 22, 2013, because he found that Mrs. Crane retained the functional capacity to engage in other work that existed in the national economy during the relevant period. Mrs. Crane sought review of the ALJ's May 2013 decision by the Appeals Council of the Office of Disability Adjudication and Review. Her request for review was denied on March 25, 2015.

Mrs. Crane then initiated this action by filing a complaint on May 20, 2015. In her complaint, Mrs. Crane alleges that the Commissioner's decision denying her claim is not supported by substantial evidence and is contrary to settled law. On this score, Crane's primary argument relates to the treatment of medical source opinions and the failure of the ALJ to give greater weight to the undated check box form submitted by her doctor. As relief she requests the award of benefits, or in the alternative remand for a new administrative hearing. The Commissioner filed an answer on August 20, 2015, in which she contends that the final decision denying Mrs. Crane's claims is supported by substantial evidence and was made in accordance with the applicable laws and regulations. Together with her answer, the Commissioner filed a certified copy of the administrative proceedings,

including a copy of all the evidence that was before the ALJ when he denied Mrs. Crane's claim.

This matter has been fully briefed by the parties and is ripe for decision. (Doc. 6; Doc. 9).

## III.   <u>Legal Standards</u>

### A.   <u>Substantial Evidence Review – the Role of This Court</u>

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  <u>See</u> 42 U.S.C. §405(g); <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 200 (3d Cir. 2008); <u>Ficca v. Astrue</u>, 901 F.Supp.2d 533, 536 (M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.  <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir. 1993).   But in an adequately developed factual record,

substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003). The question before this Court, therefore, is not whether Mrs. Crane is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

10

### B.    Initial Burdens of Proof , Persuasion and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §423(d)(1)(A); see also 20 C.F.R. §404.1505(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a).  To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.  42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.   20 C.F.R. §404.1520(a).   Under this process, the ALJ must sequentially determine:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4)

11

whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").   20 C.F.R. §404.1520(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1).  In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R. §404.1545(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work.   42 U.S.C. §423(d)(5); 20 C.F.R. §§404.1512; Mason, 994 F.2d at 1064.

Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age,

education, work experience and RFC.  20 C.F.R. §404.1512(f); <u>Mason</u>, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites.  Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination.  Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. <u>Id</u>. at 706-707.  In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." <u>Schaudeck v. Com. of Soc. Sec.</u>, 181 F. 3d 429, 433 (3d Cir. 1999).

IV.   <u>**Discussion**</u>

    A.   <u>**The ALJ's Decision Denying Ms. Crane's claim**</u>

In his May 2013 decision, the ALJ found that Mrs. Crane met the insured status requirement of Title II of the Social Security Act through March 31, 2013. He evaluated Mrs. Crane's claim at each level of the five-step sequential

evaluation process before concluding that Mrs. Crane was not disabled under the Social Security Act between November 19, 2009, and March 31, 2013.

At step one the ALJ found that Mrs. Crane did not engage in substantial gainful activity between November 19, 2009, and March 31, 2013. (Admin. Tr. 17). At step two the ALJ found that the medical evidence of record was sufficient to establish the following medically determinable severe impairments during the relevant period: fibromyalgia, and obesity. He noted that Mrs. Crane also has a history of thyroid disorder, status post right lower extremity fracture, carpal tunnel syndrome, irritable bowel syndrome, sacroiliitis, bursitis, sciatica, restless leg syndrome, anxiety disorder, and depressive disorder. (Admin. Tr. 17-18). He found that these impairments resulted in minimal, if any, limitation to Mrs. Crane's ability to engage in basic work activity, and found them to be non-severe. Id. At step three the ALJ found that Mrs. Crane did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Between steps three and four, the ALJ assessed Mrs. Crane's RFC. He found that Mrs. Crane retained the RFC to perform a range of light work with the following additional limitations:

> She was limited to occupations that required no more than occasional postural maneuvers, such as balancing, stooping, kneeling, crouching,

and climbing on ramps and stairs. She had to avoid occupations that required climbing on ladders or crawling. She had to avoid concentrated, prolonged, exposure to environments with temperature extremes, extreme dampness, and humidity. She was limited to occupations requiring no more than simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general relatively few work place changes. She was also limited to occupations that required no more than occasional interaction with supervisors, co-workers, and members of the general public.

(Admin. Tr. 20).

In reaching this RFC assessment, the ALJ had to reconcile the competing medical opinions submitted by Drs. Fisher and Gryczko. The ALJ resolved this conflict in favor of giving greater weight to Dr. Gryczko's RFC assessment, and according less weight to the undated check box form submitted by Dr. Fisher. (Admin. Tr. 22-23.) In reaching this conclusion, the ALJ noted that Dr. Gryczko's opinion drew far greater support from, and was more consistent with, the treatment records compiled in this case.

At steps four and five of the sequential evaluation process, the ALJ's findings were based on the above RFC, and informed by the testimony of VE Kane. VE Kane testified that an individual with the above RFC could not engage in Mrs. Crane's past relevant work as an office assistant, salesperson, cashier/stocker, or accounting manager. (Admin. Tr. 87-88). VE Kane also testified, however, that an individual with the above RFC and the same vocational

15

characteristics as Mrs. Crane could engage in the following occupations:  office helper (DOT #239.567-010), laundry folder (DOT #369.687-018), and mail clerk (DOT #222.687-022).   (Admin. Tr. 88-89).   She reported that there are approximately 400 office helper jobs in the northern Pennsylvania labor region, 200 laundry folder jobs in the northern Pennsylvania labor region, and 200 mail clerk jobs in the northern Pennsylvania labor region.  Id.  The ALJ found at step four that Mrs. Crane could not engage in her past relevant work during the relevant period.  (Admin. Tr. 23).  At step five he found that, during the relevant period, Mrs. Crane could engage in other work that exists in the national economy. (Admin. Tr. 24-25).

### B.   Whether the ALJ Properly Weighed the Medical Opinion Evidence of Record

Mrs. Crane's attack on the sufficiency of the ALJ's assessment of the medical opinion evidence in this case is premised largely on the ALJ's alleged failure to discuss a series of clinical observations recorded by a chiropractor, and is limited to the two medical opinions of record that address Mrs. Crane's physical limitations.   The Commissioner's regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, and

what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Although the chiropractor's notes do not constitute medical opinion evidence, and a chiropractor is not considered an acceptable medical source under the Commissioner's regulations, see 20 C.F.R. § 404.1513(a), such evidence may be considered under 20 C.F.R. § 404.1527(c)(4) when weighing medical opinion evidence.

Mrs. Crane argues that the chiropractor's notes support the medical source statement of Dr. Fisher, and contradict the RFC assessment by Dr. Gryczko. She essentially alleges that the ALJ cherry-picked the record by improperly minimizing the importance of these objective clinical observations, and asserts that remand is warranted for a more thorough review of this evidence. The ALJ addressed the chiropractor's records as follows:

> The record also reflects that the claimant received chiropractic treatment from October 2012 through April 2013. Repetitive findings are noted, which generally similar statements provided by the claimant, including, "feeling better today." The chiropractor even notes that although the claimant is a complicated case, and despite the probability of permanent residuals, "continued improvement is expected" (Exhibit 17F).

(Admin. Tr. 22). Mrs. Crane argues that this discussion is insufficient because it does not specifically discuss that the chiropractor repeatedly noted the following orthopedic signs weekly between October 2012 and April 2013: positive Kemp's

17

test; positive shoulder depression test; positive Bragard's sign; positive Laseague (straight leg raise) test; positive Patrick's test; positive Soto-Hall test. (Admin. Tr. 469-522).[3]  We are not persuaded, however, by Mrs. Crane's argument that these clinical observations support or contradict either medical source.

There is no discussion by the chiropractor or any other medical source about the significance of these orthopedic tests.  An ALJ's assessment "need not be accompanied by a medical or scientific analysis which would be far beyond the capability of a non-scientist."  Cotter, 642 F.2d at 705; Arnold, 2014 WL 940205 at *4 ("[L]ay intuitions about medical phenomena are often wrong.")(internal quotations omitted).  Furthermore, the ALJ cited ample evidence in support of his decision that Dr. Gryczko's RFC assessment is more closely aligned with the record as a whole than Dr. Fisher's, and as such cannot be disturbed.  Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011)(explaining that a reviewing

---

[3] Mrs. Crane also argues that Dr. Gryczko's RFC assessment should have been accorded less weight because Dr. Gryczko did not have the benefit of reviewing the chiropractor's notes. (Doc. 6 p. 5).  The same logic, however, may be applied to the opinion of Dr. Fisher.  There is no evidence that Dr. Fisher had the benefit of reviewing these notes prior to completing his medical source statement.  Although Dr. Fisher's medical source statement was made part of the record in May 16, 2013, Dr. Fisher's medical source statement is undated.  Mrs. Crane testified that Dr. Fisher completed the questionnaire "sometime in 2012."  (Admin. Tr. 82).  Mrs. Fisher did not begin seeing this chiropractor until October 2012.  We also note that Mrs. Crane fractured her right foot and left knee in mid-2012, and that her mobility was limited for several months during this period while she healed.

Court may not undertake a *de novo* review of the Commissioner's decision, and may not re-weigh the evidence of record); Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000)(explaining that where the medical opinions of record conflict "the ALJ may choose whom to credit, but cannot reject evidence for no reason or for the wrong reason."). Specifically, the ALJ noted that, although Mrs. Crane's allegations are somewhat supported by the record, they are not supported to the full extent alleged by Mrs. Crane or Dr. Fisher. In addition to Dr. Gryczko's assessment, the record reflects that Mrs. Crane is able to care for her personal needs, is the primary caregiver to her two children, is able to manage a household while her husband travels, and has no problem getting along with others despite the fact that she does not leave home often. The ALJ also noted that multiple sources assessed that Mrs. Crane's condition was improving with treatment.

In fact, Dr. Fisher's medical opinion was flawed in a number of respects. First, this opinion was stated through a summary check block form. It is well-settled that: "Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993). This thin reed was further undermined by the uncertain provenance of the report, which was undated and otherwise unexplained. Taking these factors into consideration, and weighing both opinions against the hundreds

of pages of treatment records provided to the ALJ, substantial evidence supported the decision to rely upon Dr. Gryczko's RFC assessment, an assessment which was supported by the greater weight of the medical evidence.

Mrs. Crane also argues that remand is warranted because the ALJ did not meet his obligation under SSR 96-5p to recontact Dr. Fisher.  SSR 96-5p, a policy ruling that addresses medical source opinions on issues reserved to the Commissioner, provides that:

> Because treating source evidence (including opinion evidence) is important, *if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner* and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

1996 WL 374183 at *6 (*emphasis added*).  However, Dr. Fisher's medical source statement does not contain an opinion on an issue reserved to the Commissioner,[4] therefore, this provision of SSR 96-5p is not applicable.  See e.g., Ross v. Colvin, No. 1:14-cv-0990, 2015 WL 1636132 at *8(M.D.Pa. Apr. 8, 2015).

---

[4] Administrative findings that would direct the determination or decision of disability are reserved to the Commissioner.  20 C.F.R. § 404.1527(d).  Examples of issues reserved to the Commissioner include, but are not limited to:  whether a claimant has an impairment meets the severity of a condition listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; what a claimant's RFC is; how the vocational factors of age, education, and work experience apply; and whether a claimant is 'disabled' or 'not disabled' under the act.  SSR 96-5p, 1996 WL 374183 at *2.

20 C.F.R. § 404.1520b(c)(1) provides that where there is insufficient evidence to determine whether a claimant is disabled, or where after weighing the evidence a decision cannot be reached about whether a claimant is disabled, the ALJ *may* recontact a treating source or other medical source to seek additional evidence or clarification.  The record in this case includes two medical opinions and over three hundred pages of medical records.  Mrs. Crane has not explained why she believes this record is insufficient.  As such we find little merit to her position that the ALJ was obligated to recontact Dr. Fisher.

## V.    <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Clerk of Court be directed to enter final judgment in favor of the Commissioner and against Mrs. Crane as follows:

1.    The decision of the Commissioner of Social Security denying Mrs. Crane's application for benefits should be affirmed; and,

2.    Mrs. Crane's requests for relief should be denied.

3.    The Clerk of Court should close this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within

fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure   to   file   timely   Objections   to   the   foregoing   Report   and

Recommendation may constitute a waiver of any appellate rights.

Submitted this 31st day of August 2016.

*<u>S/Martin C. Carlson</u>*
Martin C. Carlson
United States Magistrate Judge
